# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL GRANT, ) | |
| ) | |
| Plaintiff, ) | No. 3:10-cv-0338 |
| ) | |
| v. ) | Judge Sharp |
| ) | |
| LISA TUCKER, ) | |
| ) | |
| Defendant. ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court held a bench trial in this matter on August 5, 2013, after which the parties were instructed to file post-trial briefs. Plaintiff filed his brief on September 10, 2013.[1]

Having reviewed Plaintiff's brief, the record, the exhibits received in evidence, and the testimony of the witnesses, after considering their interests and demeanor, the Court enters the following Findings of Fact and Conclusions of Law. Except where the Court discusses different testimony on a specific issue, any contrary testimony on a specific matter has been rejected in favor of the specific fact found. Further, the Court omits from its recitation facts that it deems to be immaterial to the issues presented. To the extent the testimony of Defendant was contradicted by the testimony of Plaintiff, the Court finds that Defendant, in general, was not a credible witness. The credibility determination is based upon the inconsistencies between her testimony, her demeanor and evasiveness while testifying.

---

[1] Defendant filed neither a pretrial order nor post-trial brief.

1

# I. **FINDINGS OF FACT**[2]

Plaintiff is a British citizen who lives in Watford, United Kingdom, and Defendant resides in Erin, Tennessee. In 2006, Plaintiff and Defendant met online through a dating website called Equestrian Singles. They both had a passion for horses. In fact, Plaintiff has been involved with horses for over thirty years. Through some conversations, Plaintiff understood that Defendant was breeding horses in Tennessee.

The parties eventually became romantically involved. Plaintiff visited Tennessee and stayed with Defendant on several occasions, and on one particular occasion stayed for several months. As their relationship grew, so did the idea that they would pursue a horse breeding business in Tennessee. Plaintiff's ultimate plan was to relocate to Erin, Tennessee and pursue this breeding business with Defendant. Plaintiff was under the impression that they both had decided to invest monies into the breeding business, with Defendant willing to put in monies coming in from a disability[3] and Plaintiff willing to invest an equal amount in the business through income from being a truck driver and through mortgaging his parents' residence.[4]

As part of this business venture, Plaintiff decided that he would purchase property that had come up for sale in Erin, Tennessee,[5] and Defendant knew that Plaintiff was borrowing money to purchase the property through a mortgage on his parents' residence. It was Plaintiff's understanding that it would be his house, but after they married, it would be their house. It was also his understanding that he could not purchase the property since he was not in America, and

---

[2] The trial transcripts may be found at Docket Entry No. 60.

[3] Defendant suffers from a generalized anxiety disorder and has had Post Traumatic Stress Disorder in the past.

[4] It was only later that Plaintiff learned (and Defendant testified to) "under no circumstance could she have run a horse business" because she was "totally and completely disabled." (Trial Trans. at p. 68).

[5] The property was adjacent to the property where Defendant was living at the time. It was originally one farm that was split into two tracts.

Defendant would purchase it on his behalf. Defendant sent Plaintiff an email stating, "Lawyer called today. In order for me to put you on the deed, you need a Social Security number. He said you can go to the embassy and get a U.S. citizen to notarize a power of attorney and could try to put it on there, but it would be a delay." (Trial Exhibit No. 2). Based on the email and because he did not want to risk losing the property, Plaintiff instructed Defendant to sign on his behalf. Based on his experience with the U.S. Embassy, Plaintiff knew he would not be able to just walk into the Embassy and ask for paperwork. Plaintiff would have to obtain an appointment, which could have taken as long as six months and there would not have been any way for him to obtain the necessary documents in time for the closing deadline. Plaintiff further understood from Defendant that the seller of the property needed to have it sold before the end of the year, and if the closing did not take place by the end of the year, they would not get the property.

Subsequently, Plaintiff transferred the necessary funds to purchase the property under the belief that Defendant was purchasing the property on his behalf. It was only later that he found out his belief was wrong. According to Defendant, the property was a gift to her – and the monies Plaintiff sent her were gifts so that she could purchase the property. Plaintiff testified that he would have never sent the money to purchase the property had he known that the property was not going to be placed in his name. His intent was not to give this property to Defendant as a gift. Plaintiff tendered at closing $76,182.41 – with the funds he used to mortgage his parents' home in the United Kingdom.

Through that mortgage he obtained 50,000 pounds, which equated to roughly $96,000.00 American dollars. The amount transferred from Plaintiff to Defendant was $96,952.25. The difference between the approximately $76,000.00 that was tendered at the closing and

approximately $96,000.00 that was transferred to Defendant was to be spent by Defendant to make improvements on the property.

Plaintiff also sent money to Defendant on a number of occasions, not only to help with the horses, but also to help Defendant handle some of her personal obligations. In total, Plaintiff made cash payments to Defendant in the amount of $66,947.59. Shortly after the purchase of the home, Defendant obtained a title loan on the property in the amount of $8,000.00 and informed Plaintiff that the house would be lost if he did not immediately send to her $8,000.00 to pay off the title loan. It was then that Plaintiff realized the property was not in his name as he had believed. Plaintiff sent monies to pay off the title loan. It was not until after Plaintiff sent her the money for the purchase of the property and after the title loan was paid that Defendant told him she did not want to make her hobby into a business as they had previously discussed. Plaintiff realized he had been duped and stopped sending money to her.

Defendant admitted that the parties had discussed raising funds together to try and purchase the property, yet she had no money at the time. She admitted to being disabled for quite some time and did not contribute any of her money to the purchase of the property. She denied telling Plaintiff that the two of them could put together a breeding facility. In fact, Defendant went on to suggest Plaintiff's idea was illusory and testified that "[m]aybe [it was] a dream he had with his former wife." (Trial Trans. at p. 68). And that she made absolutely no statements to Plaintiff, wherein she would be interested in doing any type of horse business because as a single mother with two elderly parents, she could not run a horse facility. (*Id.*).

Once the parties' relationship ended, Defendant never had any thought about selling the property and returning the money to Plaintiff nor transferring the property to Plaintiff – because she would be left homeless and he made a lot of money as a truck driver in the United Kingdom.

Defendant is still living in the home located in Erin, Tennessee. Plaintiff is currently paying 810 pounds a month toward the mortgage on his parents' home and will be obligated to do so until this mortgage is paid, which he anticipates will be in 2017.

## II. CONCLUSIONS OF LAW

As an initial matter, the Court notes that because it has "diversity" jurisdiction over this case, 28 U.S.C. § 1332, the law of the forum state—Tennessee—will govern the substantive issues. *See, e.g., Biegas v. Quickway Carriers, Inc.,* 573 F.3d 365, 374 (6th Cir. 2009) ("Under the *Erie* doctrine, federal courts sitting in diversity apply the substantive law of the forum state and federal procedural law.") (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

### A. *Deceit and Fraud*

The first cause of action brought by Plaintiff is for deceit and fraud. In Tennessee, a common law claim of deceit requires that "a party intentionally misrepresents a material fact or produces a false impression in order to mislead another, or to obtain an undue advantage of him." *Haynes v. Cumberland Builders, Inc.,* 546 S.W.2d 228, 232 (Tenn. Ct. App. 1976)( *citing Rose v. Foutch,* 4 Tenn.App. 495 (Tenn. Ct. App. 1926). It must be shown that the misrepresentation was made with both knowledge of its falsity and also with a fraudulent intent. *Godwin Aircraft, Inc. v. Houston,* 851 S.W.2d 816, 821 (Tenn. Ct. App. 1992)( *citing Shwab v. Walters,* 147 Tenn. 638, 251 S.W. 42 (Tenn. 1922). The misrepresentation must have been with respect to an existing material fact, and the plaintiff must have reasonably relied on the misrepresentation to his injury. *Whitson v. Gray,* 40 Tenn. 441 (Tenn. 1859); *Dozier v. Hawthorne Dev. Co.,* 37 S.W.2d 705 (Tenn. Ct. App. 1953).

Under Tennessee law, a plaintiff must establish four elements to prove fraud:

> (1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation's falsity (i.e., it was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity); (3) the plaintiff reasonably relied on the misrepresentation and suffered damage; and (4) the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, the misrepresentation "must embody a promise of future action without the present intention to carry out the promise."

*McMillin v. Lincoln Mem'l Univ.,* No. E2010–01190–COA–R3–CV, 2011 WL 1662544, at *5 (Tenn. Ct. App. May 3, 2011) (quoting *Shahrdar v. Global Hous., Inc.,* 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998)); *accord Carter v. Patrick,* 163 S.W.3d 69, 77 (Tenn. Ct. App. 2004) (citing *Stacks v. Saunders,* 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)).

In this case, Defendant misrepresented Plaintiff as to her true objectives about creating and pursuing the horse breeding business. The evidence provides Defendant knew at the time she made certain promises about pursuing the business that she would not ultimately follow through with them. An additional misrepresentation was made when Defendant expressed to Plaintiff that the property located in Erin, Tennessee, would be in his name – when in fact, she had the property put in her name.

The Court finds Plaintiff has provided sufficient evidence that Defendant made an intentional misrepresentation of facts, with knowledge of their falsity. Plaintiff reasonably relied on the representations made by Defendant, which resulted in an injury to himself. Therefore, the Court finds Plaintiff has established that Defendant committed both deceit and fraud in violation of Tennessee law.

B. *Breach of Fiduciary Duty*

Next, Plaintiff alleges Defendant breached her fiduciary duty when she took monies that belonged to Plaintiff (with which she was entrusted) – and used those funds to purchase property in her own name. Under Tennessee law, "[f]iduciary relationships may arise whenever

confidence is reposed by one party in another who exercises dominion and influence." *Thompson v. Am. Gen. Life & Accident Ins. Co.,* 404 F.Supp.2d 1023, 1028 (M.D.Tenn. 2005) (citing *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n,* 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992)). "A fiduciary duty is the duty to act primarily for another's benefit." *Id.* Generally, parties dealing at arm's length "lack the sort of relationship of trust and confidence that gives rise to a fiduciary relationship." *Dick Broadcasting Co., Inc. v. Oak Ridge FM, Inc.,* 395 S.W.3d 653, 674 (Tenn. 2013).

Tennessee law recognizes two main types of fiduciary relationships. The first is fiduciary *per se,* "such as between a guardian and ward, an attorney and client, or conservator and incompetent." *Foster Bus. Park, LLC v. Winfree,* No. M2006–02340–COA0R30CV, 2009 WL 113242, at *12 (Tenn. Ct. App. Jan. 15, 2009). The second type of relationship, which is not *per se* fiduciary, arises when "one party exercise[s] 'dominion and control over another.' " *Id.* (citations omitted). This latter relationship is often referred to as a "confidential relationship." *Id.* "Because confidential relationships can assume a variety of forms, the courts have been hesitant to define precisely what a confidential relationship is and the court must look to the particular facts and circumstances of the case to determine whether one party exercised dominion and control over another, weaker party." *Id.* This type of relationship can be demonstrated by showing "(1) the defendant was in a position to influence or control the plaintiff; (2) the defendant used the confidences given to him or her to obtain some benefit from, or advantage over, the plaintiff; and (3) the plaintiff, as the dominated party in the relationship, suffered some detriment at the hands of the defendant." *Givens v. Mullikin,* 75 S.W.3d 383, 410 (Tenn. 2002). The party asserting that a confidential relationship exists bears the burden of proving such relationship. *Childress v. Currie,* 74 S.W.3d 324, 328 (Tenn. 2002).

Proof of damages is an essential element of" a fiduciary duty claim, *Union Planters Bank of Middle Tenn. v. Choate,* No. M1999–01268–COA–R3–CV, 2000 WL 1231383, at *3 (Tenn. Ct. App. Aug. 31, 2000), as is causation of damages. *See* Restatement (Second) of Torts § 874 ("One standing in a fiduciary relation with another is subject to liability to the other for harm *resulting from* a breach of duty imposed by the relation." 23 Tennessee Practice *Elements of an Action* § 8:1 (2009) (including damages and proximate cause as elements to the cause of action for fiduciary duty).

The evidence before the Court demonstrates that a confidential relationship existed between the parties and as such, Defendant owed a fiduciary duty to Plaintiff. Defendant was in a position to influence Plaintiff. Not only was she his future wife, she was going to be his partner in their horse breeding business (or so Plaintiff thought). Defendant, in turn, used those assurances to convince Plaintiff to allow her to close on the property located in Erin, Tennessee (purportedly on his behalf). As a result, Plaintiff is not the owner of the property, is out-of-pocket thousands of dollars he gave to Defendant along the way, and is now paying off a second mortgage on his parents' home. The Court finds that Defendant breached the fiduciary duty she owed to Plaintiff.

*C. Conversion*

Plaintiff has further alleged that Defendant converted certain "assets, money, and other things of value" that were the property of Plaintiff, and Defendant did that for "her own benefit to the exclusion of Plaintiff." (Docket Entry No. 1 at 5). "Conversion is an intentional tort." *Greenbank v. Thompson,* No. E2010–00160–COA–R3–CV, 2010 WL 5549231, at *3 (Tenn. Ct. App. Dec. 29, 2010); *see also Thompson v. Thompson,* No. W2008–00489–COA–R3–CV, 2009 WL 637289, at *14 (Tenn. Ct. App. Mar. 12, 2009) ("To constitute conversion, the

defendant must intend to convert the plaintiff's property." (citing *Gen. Electric Credit Corp. of Tenn. v. Kelly & Dearing Aviation,* 765 S.W.2d 750, 753 (Tenn. Ct. App. 1988))). "To prove conversion, a plaintiff must show the following: (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." *Greenbank,* 2010 WL 5549231, at *3 (citing *H & M Enters., Inc. v. Murray,* No. M1999–02073–COA–R3–CV, 2002 WL 598556, at *3 (Tenn. Ct. App. Apr. 17, 2002); *accord Thompson,* 2009 WL 637289, at *14). The intention necessary to establish conversion "does not necessarily have to be a matter of conscious wrongdoing, but can merely be an exercise of dominion or control over the property in such a way that would be inconsistent with the owner's rights and which results in injury to him." *Thompson,* 2009 WL 637289, at *14 (quoting *Gen. Electric Credit Corp. of Tenn.,* 765 S.W.2d at 753). "In other words, 'the defendant need only have an intent to exercise dominion and control over the property that is in fact inconsistent with the plaintiff's rights, and do so; good faith is generally immaterial.' " *Id.* (quoting *Mammoth Cave Prod. Credit Ass'n v. Oldham,* 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977)). "It is the degree of interference with the property, as well as the duration of that interference, that will be determinative of whether there has been conversion." *Id.* (citing *Gen. Electric Credit Corp. of Tenn.,* 765 S.W.2d at 753–54).

The Court finds that sufficient evidence has been presented to support Defendant converted Plaintiff's money for her own use and benefit by intentionally exercising dominion over that money in defiance of Plaintiff's rights. Therefore, Defendant is liable for conversion.

D. *Unjust Enrichment*

Lastly, Plaintiff contends that Defendant has been unjustly enriched, and thus seeks the imposition of a constructive trust. "The elements of an unjust enrichment claim are: 1) '[a]

benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.' " *Freeman Indus., LLC v. Eastman Chem. Co.,* 172 S.W.3d 512, 525 (Tenn. 2005) (quoting *Paschall's, Inc. v. Dozier,* 219 Tenn. 45, 407 S.W.2d 150, 155 (1966)); *accord Hood Land Trust v. Hastings,* No. M2009–02625–COA–R3–CV, 2010 WL 3928647, at *6 (Tenn. Ct. App. Oct. 5, 2010). "The remedy for unjust enrichment requires that the person who has been unjustly enriched at the expense of another make restitution to that person." *Chase Manhattan Bank, N.A. v. CVE, Inc.,* 206 F.Supp.2d 900, 909 (M.D.Tenn. 2002) (citing *Browder v. Hite,* 602 S.W.2d 489, 491 (Tenn. Ct. App. 1980)).

Plaintiff has offered evidence that Defendant received money from Plaintiff and used that money to purchase property in her own name rather than using it to purchase the property on his behalf, causing Plaintiff to suffer significant losses. The Court finds Plaintiff has been unjustly enriched. Defendant received, and continues to receive, the benefit of the house and property located at 891 Moore Branch Road, Erin, Tennessee, which was paid for by Plaintiff. Retention of that benefit under these circumstances would be inequitable.

Therefore, Plaintiff has asked the Court to impose a constructive trust. In Tennessee, courts have long recognized that "[e]quity regards that as done which in good conscience ought to be done." *See Federal Trade Comm. v. Vocational Guides, Inc.*, 2009 WL 943486 at *19 (M.D.Tenn. 2009) and *Hudgins v. Unumprovident Corp.*, 2005 WL 2452589 at * 4 (M.D.Tenn. 2005) (citing *Holt v. Holt*, 995 S.W. 2d 68, 77 (Tenn. 1999). "In so holding the courts have created a constructive trust avoiding unjust enrichment where a party holds 'legal title to property which he ought not, in equity and good conscience hold and enjoy.'" *See Federal*

*Trade Comm.*, 2009 WL 943486 at *19 (citing *Rowlett v. Guthrie*, 867 S.W. 2d 732, 734 (Tenn. Ct. App. 1993)).

A constructive trust is an equitable remedy "implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises." *Story v. Lanier,* 166 S.W.3d 167, 184 (Tenn. Ct. App. 2004) (quoting *In re Estate of Nichols,* 856 S.W.2d 397, 401 (Tenn. 1993)). The Tennessee Supreme Court set forth the standard applicable to whether a constructive trust should be imposed in a particular case:

> This Court has previously recognized that a constructive trust may be imposed where, for example, a person (1) obtains legal title to property in violation of some duty owed the owner of the property; (2) obtains title to property by fraud, duress, or other inequitable means; (3) makes use of a confidential relationship or undue influence to obtain title to property upon more advantageous terms than would otherwise have been obtained; or (4) obtains property with notice that someone else is entitled to the property's benefits.

*Stewart v. Sewell,* 215 S.W.3d 815, 826 (Tenn. 2007).

The standard of proof to establish a constructive trust is by clear and convincing evidence. *In re Conservatorship of Brown,* No. W2004–02825–COA–R3–CV, 2005 WL 1848482, at *3 (Tenn. Ct. App. Aug. 5, 2005). This standard "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." *Id.* at *4 (quoting *O'Daniel v. Messier,* 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995)).

The Court finds that a constructive trust should be imposed in this case. The evidence in this case is abundantly clear that Plaintiff obtained the title to 891 Moore Branch Road, Erin, Tennessee by "fraud, duress or other inequitable terms." *See Stewart*, 215 S.W.3d at 826. This Court has the authority to use its inherent powers to "fashion effective relief." *See Federal Trade Comm.*, 2009 WL 943486 at *19 (citations omitted)). As such, the Court will impose a constructive trust, wherein Defendant is the trustee and Plaintiff is the beneficiary of said trust.

## III. DAMAGES

Plaintiff also requests a monetary judgment in the amount of $40,000.00, which "represents damages suffered by [him] as a result of [Defendant's] material misrepresentations." (Docket Entry No. 61 at 9). If a plaintiff is seeking an award of damages based upon intentional or fraudulent misrepresentations, the burden of proof is by a preponderance of the evidence. *Elchlepp v. Hatfield,* 294 S.W.3d 146, 150 (Tenn. Ct. App. 2008) (citing *Capital Mgmt. Partners v. Eggleston,* No. W2004–01207–COA–R3–CV, 2005 WL 1606066, at *8 (Tenn. Ct. App. July 7, 2005)). In this case, the Court finds that Plaintiff has successfully proven by a preponderance of the evidence that Defendant's misrepresentations were fraudulent and therefore shall be awarded monetary damages.

The Court is not unsympathetic to the fact Plaintiff paid thousands of dollars to Defendant. However, Plaintiff has failed to present sufficient evidence as to the entire $40,000.00 he has requested. For instance, at one point Plaintiff made a transfer of $5,102.75 into Defendant's bank account. But when asked the purpose of that transfer, Plaintiff testified "I've got no way of telling if [the funds] were for horse [sic] or not. I think it was domestic." (Trial Trans. at pp. 59-60). There was also further testimony of the same nature relating to other bills Defendant could not afford to pay, such as "kids' medication and tuition." (*Id.* at 41). When asked about these expenses, Plaintiff testified "[i]t was just whatever needed to be paid." (*Id.*).

There was certain testimony, however, wherein Plaintiff provided testimony that linked the monies to the horse breeding business itself. Plaintiff transferred a total of $96,952.25 for the purchase of the property in Erin, Tennessee. The actual purchase price was $76,182.41. The remainder of the transfer, $20,769.84, was to make improvements on the property, including

buying appliances and things to get the house ready for occupancy. (Trial Trans. at p. 33). The Court will award the $20,769.84 to Plaintiff. Also, Plaintiff has presented evidence that an $8,000.00 loan was taken against property by Defendant. Plaintiff had to ultimately pay this amount or lose the property. (*Id*. at pp. 35-37). The Court will award the $8,000.00 to Plaintiff. Based on the foregoing, the Court will enter a judgment for Plaintiff against Defendant in the amount of $28,769.84.

## IV. CONCLUSION

Based on the foregoing, the Court determines that Plaintiff has established Defendant's liability in this case. Accordingly, judgment will be entered in favor of Plaintiff against Defendant. The Court will impose a constructive trust, wherein Defendant is the trustee and Plaintiff is the beneficiary of said trust. Plaintiff shall be required to execute a Quit Claim deed conveying the referenced property to Plaintiff within thirty days. Further, Plaintiff shall be awarded $28,769.84 in monetary damages.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE